[No. 39405. En Banc. March 6, 1969.]

PHILLIP N. KENDRICK, as *Executor, Appellant,* v. MILLARD C. DAVIS *et al., Respondents.*\*

\*Reported in 452 P.2d 222.

*James V. Abbott* and *Abbott & Curtis*, for appellant.

*Richard E. Kane* and *Kadish & Kane*, for respondents.

NEILL, J.—Plaintiff, the personal representative of the estate of a deceased vendor under a forfeitable real-estate contract, seeks to quiet title to the premises covered by the contract and to recover possession thereof. Plaintiff's motion for summary judgment was entered against defendants Davis. However, the court refused to enter summary judgment against defendants Lee James Finance Company, Inc. and Lee James Finance Plan, Inc. Instead, an order was entered adjudging the two corporate defendants to be the purchasers and reinstating the contract as to such defendants. Plaintiff appeals. The two corporate defendants are the only respondents appearing in this court. For convenience we will refer to them as the defendants.

The chronology of significant events is:

September 26, 1961, a real-estate contract for the sale of two houses and lots for $18,500, with a down payment of $1,100 and monthly payments of $120 was executed by R. H. Kendrick and wife as vendors and Millard C. Davis and wife as purchasers. Recorded October 4, 1961.

October 27, 1961, the purchasers assigned[1] their interest to Lee James Finance Company, Inc., to secure a loan of $1,000. Recorded October 30, 1961.

October 28, 1964, the purchasers assigned[2] their interest to Lee James Finance Plan, Inc., to secure a loan of $3,951. Recorded November 5, 1964.

August 2, 1965, last payment made by the purchasers.

---

[1] This instrument was in form a combined quitclaim deed and assignment of contract, containing the statement: "This assignment and deed is given as security for a loan of $1000.00."

[2] This instrument was in form a combined quitclaim deed and assignment of contract, containing the statement: "This assignment and deed is given as security for a loan of $3951.00."

January 6, 1966, plaintiff sent a notice by registered mail to the purchasers that unless delinquent payments were made by January 31, 1966, the contract would be forfeited.

February 1, 1966, no payments having been made in response to the notice, plaintiff sent a Notice of Declaration of Forfeiture and Cancellation of Contract to the purchasers. This was received by purchasers on February 3, 1966, and recorded March 21, 1966.

April 21, 1966, Lis Pendens recorded in an action against the purchasers to quiet title to the property covered by the contract.

May 31, 1966, Amended Notice of Lis Pendens recorded which indicated that an amended complaint had been filed, making the assignees—Lee James Finance Company, Inc., and Lee James Finance Plan, Inc.—defendants. In the amended complaint plaintiff asked that the contract be terminated; that possession of the property be restored to him; and that title be quieted against all of the defendants.

June 24, 1966, answer of the two assignees was filed, claiming an interest in the property "by virtue of a purchasers assignment of contract and deed for security."

July 1, 1966, answer of purchasers filed (a general denial).

July 8, 1966, motion by plaintiff for summary judgment against all defendants.

September 7, 1966, the two assignees of the purchasers' interest tendered into court $16,113, which constituted the entire balance due under the contract, together with costs and attorneys' fees.

October 7, 1966, a summary judgment was entered, the decretal portions of which are as follows:

It Is Ordered, Adjudged and Decreed that the plaintiff is awarded summary judgment against defendants Millard C. Davis and Agnes Davis, his wife, and the marital community composed thereof, and that plaintiff's motion for summary judgment against Lee James Finance Co., Inc. and Lee James Finance Plan, Inc. is denied; and

It Is Further Ordered, Adjudged and Decreed that the real estate contract herein covering the following-de-

scribed premises situated in Snohomish County, Washington,

Lots 3 and 4, Block 2, Appleton Acre Tracts, as per plat recorded in volume 8 of plats, page 27, records of Snohomish County, situate in the County of Snohomish, State of Washington,

by which plaintiff herein is contract vendor, and defendant Lee James Finance Co., Inc. and Lee James Finance Plan, Inc. are vendees herein by virtue of that purchaser's assignment of contract and deed dated October 27, 1961, between Millard and Agnes Davis and defendants Lee James Finance Plan, Inc. and Lee James Finance Co., Inc., and that deed and purchaser's assignment of real estate contract dated October 28, 1964, between Millard and Agnes Davis, as grantors, and Lee James Finance Co., Inc. and Lee James Finance Plan, Inc., as grantees, is hereby reinstated; and

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendants Lee James Finance Co., Inc. and Lee James Finance Plan, Inc. will pay a total of $500.00 to plaintiff for the reinstatement of said contract and will continue to make monthly payments, per the terms of said contract; and

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Clerk of the Court for Snohomish County will pay to plaintiff or his attorney the sum of $3,539.82, which sum will be deducted from the amount of $16,113.00 which has been heretofore tendered into the Registry of the Court under this cause number, and that the remaining amount, more specifically, $12,572.18, will be returned to defendant Lee James Finance Co., Inc. and Lee James Finance Plan, Inc., or their attorneys.

Plaintiff appeals from this judgment.

Although the court had, by its summary judgment, reinstated the contract with the two corporations as vendees, and a notice of appeal had been given on November 3, it nevertheless entered an order on November 25 giving plaintiff possession of the premises "pending the appeal," with directions to plaintiff to account to the corporate defendants for the rentals received from the property if the corporations should prevail on this appeal, but not otherwise. This order is seemingly based on our statement in *Norlin v. Montgomery*, 59 Wn.2d 268, 272, 367 P.2d 621 (1961),

460

"Under the statutes and the facts of this case, Norlin, as mortgagee, has no right to possession until he is the successful bidder at an execution sale, and a sheriff's deed to the equity in the property has been received by him."

 We have heretofore held that the purchaser in an executory real-estate contract has an interest which he can mortgage. *Sigman v. Stevens-Norton, Inc.,* 70 Wn.2d 915, 425 P.2d 891 (1967); *Norlin v. Montgomery, supra; Nelson v. Bailey,* 54 Wn.2d 161, 338 P.2d 757, 73 A.L.R.2d 1400 (1959).

The quitclaim deeds and assignments of contract interest from the purchasers to the corporate defendants were not accompanied by any change of possession. Each stated that it was given to secure the payment of a loan.

It is unnecessary to labor the proposition that these instruments were mortgages and not quitclaim deeds and assignments as they purport to be, since on their face they carry the label of security transactions. An instrument may in form be a deed or an assignment, but, if the intent is to use the property as security, it will be a mortgage. *Mittlesteadt v. Johnson,* 75 Wash. 550, 553, 135 Pac. 214 (1913).

Plaintiff does not dispute the proposition that the corporate defendants are mortgagees of the contract purchasers, but urges that he was entitled to rely on the contract forfeiture provision. He contends that he was obligated to give notice of intent to forfeit only to the purchasers, since he had no knowledge, actual or constructive, of the rights of those who had loaned money to the purchasers on the security of their contract interest. He argues that the rights of the purchasers having been forfeited, their assignees or mortgagees have no rights which the plaintiff-vendor must recognize.

It should be pointed out that this is not an action to judicially declare the forfeiture of a contract—the contract was terminated, at least as to the purchasers, by exercise of the vendor's forfeiture rights. Rather, we are here concerned with the question of whether that forfeiture is effective as to the mortgagees of the purchasers' interest

under the contract. In this connection, cases such as *Dill v. Zielke*, 26 Wn.2d 246, 173 P.2d 977 (1946), and *Moeller v. Good Hope Farms, Inc.*, 35 Wn.2d 777, 783, 215 P.2d 425 (1950), are to be distinguished. In that line of decisions, we were concerned with a balancing of the equities between the original contracting parties or between parties who had acted with full knowledge and notice of the claims of others.

It is clear that the plaintiff vendor's declaration of forfeiture would have been fully effective except for the existence of recorded mortgages on the purchasers' interest under the forfeitable real-estate contract. It is also clear that the mortgagees had a lien only on the rights of the original contract purchaser and, consequently, if that contract had been effectively terminated by the proper exercise of the vendor's right of forfeiture there would have been no interest remaining upon which the mortgagees' liens could operate. The question presented, therefore, is whether the existence of such mortgages will render ineffective the vendor's declaration of forfeiture given to the purchasers alone.

If the plaintiff vendor had received actual notice of the interests of the mortgagees of the purchasers, he would be required to recognize their interests and give them notice of any intent to forfeit the contract. *Scott v. Farnam*, 55 Wash. 336, 104 Pac. 639 (1909). Further, under such circumstances, the mortgagees would have the right to make or tender the payments to the vendors necessary to protect their security, *i.e.*, to keep the contract in effect. *Scott v. Farnam, supra*. However, the mortgagees would have no right to possession nor to require the transfer of title under the contract until they acquired the interests of the purchaser-mortgagor, either by foreclosure or by the purchaser's conveyance thereof. RCW 7.28.230; *Howard v. Edgren*, 62 Wn.2d 884, 385 P.2d 41 (1963).

Moreover, if the real-estate contract specifically prohibited any assignment or mortgage of the purchasers' contract rights, or required that the vendor approve of any such assignment or mortgage, then the vendor would not have been required to give notice of forfeiture to those

possessing such interests who had failed to notify the vendor that they held such assignment or mortgage.

The case at bar, however, falls outside the ambit of the foregoing situations. The vendor did not have actual notice of the existence of the mortgages, nor did the contract contain any prohibitions or requirements with respect to the assigning or mortgaging of the purchasers' interests. The effect of the judgment entered by the trial court is to hold that when a forfeitable real-estate contract contains neither a prohibition against assignment nor a requirement that the vendor approve of any assignment or mortgage of the purchasers' interests in the contract, then the vendor must give notice of intent to forfeit to all those possessing such interests as would be shown by a title search made at the time of forfeiture.

Simply stated, we have in this case (1) a valid forfeitable real-estate contract properly recorded; (2) a purchaser in default; (3) a vendor declaring a forfeiture according to the contract terms; and (4) a mortgagee of the purchaser who is unknown to the vendor, but whose security interest is properly recorded. Defendants argue that, under this set of facts, it would be inequitable to allow the mortgagee to lose the security for his loan when the vendor's rights supposedly can be fully protected by allowing the mortgagee to make the payments necessary to keep the contract in effect.

However, the determination as to whether or not the mortgagee's loss of his security would be inequitable depends upon how we resolve the real issue in this case—namely, whether the duty of giving notice is on the vendor or on the mortgagee.

If we were to first conclude that the vendor had a duty to notify the mortgagee of an intent to forfeit the contract and the vendor failed to do so, then allowing the mortgagee to lose his security interest would be inequitable, since the mortgagee's loss would be the result of the vendor's breach of his duty to the mortgagee. On the other hand, if we first conclude that the mortgagee had the burden of protecting his position by notifying the vendor that he held a mortgage

on the purchaser's interest and the mortgagee failed to so notify the vendor, then the mortgagee's loss of his security upon the forfeiture of the contract is not inequitable as the mortgagee's loss is the result of his own neglect and not of any act or omission of the vendor.

However, protecting the mortgagee's security does not require an exercise of this court's equity powers in expanding the vendor's duty beyond that which is specifically provided for in the contract (*i.e.*, by requiring the vendor to give notice to all mortgagees of record as well as to all those of whom he has actual knowledge). The mortgagee can fully protect his security interest by merely notifying the vendor that he has an interest in the purchaser's contract rights. The form under which these defendants acquired their interests is not material. Even had these claims been as full assignments of the purchaser's interests in the contract, the burden as to notice would remain with these defendants. We set forth the correct rule as to assignees of a contract in *Stansbery v. Medo-Land Dairy, Inc.*, 5 Wn.2d 328, 337, 105 P.2d 86 (1940), wherein we stated:

> Notice to the debtor of an assignment is not necessary to render the assignment binding as between the assignor and assignee. However, the debtor is not bound thereby until he receives notice of the assignment, and prior to receiving such notice the debtor may settle his obligation with his creditor . . . without rendering himself liable to the assignee. The assignor can assign no greater interest than he has, and the assignee gets no greater right than the assignor had, at the time notice of the assignment was received by the debtor.

Defendants contend that the duty of notice should be on the vendor because he knew that under the terms of the contract the purchaser could have and might have assigned or mortgaged his interest after the execution of the contract and also because prior to his declaration of forfeiture the vendor could have obtained a title search to determine whether anyone might have obtained such interests. We think the obligation is otherwise. The burden is on the mortgagee to notify the vendor of his interest in the contract. No undue burden is thus placed on the mortgagee as he

would have actual knowledge both of the identity of the vendor and of the vendor's right to declare a forfeiture of the contract upon the purchaser's default. Conversely, the vendor would not have notice of any mortgage or assignment unless and until he either received notice from the mortgagor or purchaser or made a title search himself.

■ In view of our holding in *Norlin v. Montgomery*, 59 Wn.2d 268, 367 P.2d 621 (1961), we must examine the question of whether the fact that the defendants' mortgages were recorded constituted constructive notice to the vendor. If the vendor was given constructive notice by the recording, then he clearly was under a duty to give the mortgagees notice of his intent to forfeit the contract. But the recording of the mortgages did not give constructive notice of their existence to the vendor who was an antecedent party in the chain of title.

The recording of an instrument is constructive notice only to those parties acquiring interests subsequent to the filing and recording of the instrument. The recording of an instrument does not constitute notice to antecedents in the chain of title. *Ackerson v. Elliott*, 97 Wash. 31, 165 Pac. 899 (1917); *Ryan v. Plath*, 18 Wn.2d 839, 140 P.2d 968 (1943); *Waldrip v. Olympia Oyster Co.*, 40 Wn.2d 469, 244 P.2d 273 (1952); *Finley v. Finley*, 43 Wn.2d 755, 264 P.2d 246, 42 A.L.R. 2d 1379 (1953).

Two or three other Washington cases make the general statement that "the recording of an instrument is notice to the world" without limiting the statement to parties who are subsequent in the chain of title. However, the reading of each of these cases, with a single exception, will show that the general statement was used in a case wherein the party had received actual notice or was a case wherein the party to whom constructive notice was imputed was, in fact, a subsequent party. *See Strong v. Clark*, 56 Wn.2d 230, 232, 352 P.2d 183 (1960) (involved a subsequent party); *Allen v. Graaf*, 179 Wash. 431, 38 P.2d 236 (1934) (involved an antecedent party who had *actual* knowledge of the claim of the subsequent lienholder). The single exception is *Norlin v. Montgomery*, 59 Wn.2d 268, 367 P.2d 621 (1961).

*Norlin* cites and relies on *Smith v. Northern Pac. R.,* 22 Wash. 500, 61 Pac. 255 (1900); *Brummett v. Campbell,* 32 Wash. 358, 73 Pac. 403 (1903); *Shaw v. Benesh,* 37 Wash. 457, 79 Pac. 1007 (1905); *Scott v. Farnam,* 55 Wash. 336, 104 Pac. 639 (1909); and *Strong v. Clark, supra.* Each of these supporting cases were cases involving either *actual* notice to the vendor or a *subsequent* party in the chain of title.

We stated in *Smith,* at 509, "[A]nd, having actual notice of the existence of plaintiff's mortgage prior to any attempt upon its part to declare a forfeiture, the mortgagee was entitled to notice of [forfeiture] . . . ."

We stated in *Brummett,* at 367, "The appellant was fully aware of the obligation of Koontz under this contract to convey this land to Ray . . . at the time he became the assignee of the contract between Koontz and the state."

*Shaw,* was a case involving the right of a pledgee (assignee) of the vendor who attempted a forfeiture without notice to *his own assignee.*

*Scott,* at 340, states, "The appellants had actual notice of the respondent's mortgage."

*Strong,* was a case wherein the plaintiff was a trustee in bankruptcy who was alter ego for creditors who were *subsequent* parties properly charged with notice of a recorded instrument. The notice therein was as to the commencement of the running of the statute of limitations and the creditors were not parties who dealt with the real estate and the chain of title thereto.

Accordingly, *Norlin,* is overruled insofar as it is inconsistent herewith.

Defendants, having failed to give plaintiff notice of their mortgagee interests, were not entitled to receive a notice of the forfeiture. The contract was forfeited in accordance with its terms and there is no purchaser's interest remaining in the realty upon which the assignees' (mortgagees') claims can attach.

Plaintiff also assigns error to the failure of the trial court to award attorney's fees, costs and reasonable rental for the premises from February 3, 1966, to November 25, 1966.

■ The contract contains a provision for allowance of a reasonable attorney fee in an action by the vendor to "procure an ajudication of the termination of the purchaser's rights hereunder." Such award should have been included in the judgment against Davises. *Suess v. Heale,* 68 Wn.2d 962, 416 P.2d 458 (1966). Since we hold these corporate defendants to be mortgagees only, there is no contractual obligation which will support a judgment for attorney's fees against them.

Costs are properly included in a judgment against all defendants. RCW 4.84.030.

These corporate defendants were not in possession of the premises between February 3, 1966, and the date of the order giving plaintiff possession pending this appeal. Nor were they entitled to possession. Accordingly, judgment for reasonable rental value must be against defendants Davis only.

Reversed with instruction to enter judgment in accordance herewith.

HUNTER, C. J., WEAVER, HAMILTON, HALE, and McGOVERN, JJ., concur.

FINLEY, J., concurs in the result.

HILL, J. (dissenting)—I dissent. My only quarrel with the majority's academically sound opinion is that it ignores the practicalities of our time and the importance of a title search in all real-estate transactions.

We live in a time when both a seller and a purchaser may be frequently conveying, mortgaging, or pledging their respective contract interests.

The majority points out that had the mortgagees of the contract interest, Lee James Finance Company, Inc., and Lee James Finance Plan, Inc., notified R. H. Kendrick of the mortgage they would have been entitled to notice of the forfeiture. The plaintiff is not R. H. Kendrick, but Phillip N. Kendrick, as executor of the estate of R. H. Kendrick, (it might have been John Doe or Richard Roe, as assignee or grantee of R. H. Kendrick) who may not have been ad-

vised of the notice given to R. H. Kendrick. We live in a time when both the seller's interest and the purchaser's interest are subject to frequent transfer and frequent use in credit transactions. It would be much better for all concerned "to give constructive notice to all the world" than to rely on actual notice to one or two.

The traditional prudent and cautious man would not proceed in such a situation without a title search, and it seems to me that we better serve the public interest by holding that the one who neglects to do so will not be permitted to acquire a more advantageous position than one who uses the sources of information open to all.

I would, therefore, recognize the interests of the mortgagees, Lee James Finance Company, Inc., and the Lee James Finance Plan, Inc.

The plaintiff-seller does not dispute the proposition that the corporate defendants are mortgagees of the contract purchasers, but urges that he was entitled to rely on strict contract foreclosure procedure, and that he was only obligated to give notice of intent to forfeit to the purchasers since he had no knowledge, actual or constructive, of the rights of those who had loaned money to the purchasers on the security of their contract interest. It is argued that the rights of the purchasers being forfeited, their assignees or mortgagees have no rights which the plaintiff-seller must recognize.

We cannot agree with this contention. It is logical but it is not equitable, nor is it consistent with usual practice. The aid of the court has been invoked to forfeit the contract and to quiet title against the purchasers. Into the action came Lee James Finance Company, Inc., and Lee James Finance Plan, Inc. (claiming to have loaned $4,951 on the security of the purchasers' interest in that contract). If, without injury to the rights of the plaintiff-seller under the contract, it is possible to protect the rights of the corporate defendants who have loaned money to the purchasers on the security of that contract, it would seem the proper and just thing to do. In this case the interest of the plaintiff-seller in

the executory real-estate contract was completely protected by the tender of $16,113 into court.[3]

Plaintiff-seller is like the appellant in *Dill v. Zielke*, 26 Wn.2d 246, 253, 173 P.2d 977 (1946), of whom we said, "appellant has not lost one cent upon her contract but is in a position to receive every dollar to which she is entitled under her agreement." In that case, we also said that a forfeiture would not be enforced if it "would do violence to the principle of substantial justice between the parties" (p. 252). In rather early times, we declared that we would "seize upon any circumstance, however slight, to prevent the enforcement of a forfeiture" where equities existed that merited protection. *Smith v. Northern Pac. R.*, 22 Wash. 500, 509, 61 Pac. 255 (1900).

The following are a few of the many cases in which we have refused to permit an unconditional forfeiture: *State ex rel. Foley v. Superior Court*, 57 Wn. 2d 571, 358 P.2d 550 (1961); *Radach v. Prior*, 48 Wn.2d 901, 904, 297 P.2d 605 (1956); *Moeller v. Good Hope Farms, Inc.*, 35 Wn.2d 777, 783, 215 P.2d 425 (1950); *Dill v. Zielke, supra,* and cases cited therein.

Such a procedure is not a denial of the right to forfeit a contract, but is a condition imposed upon that right when the equities of a particular case warrant it. *Moeller v. Good Hope Farms, Inc., supra,* and cases cited therein.

If the plaintiff-seller had had actual notice of the interests of the mortgagees of the purchasers, there is no question that he would be required to recognize their interests and give them notice of any intent to forfeit the contract. *Scott v. Farnam*, 55 Wash. 336, 104 Pac. 639 (1909); *Smith v. Northern Pac. R., supra.*

The successors in interest of the sellers should be charged with constructive notice which all the rest of the world possesses concerning the mortgage of the purchasers' interest in the contract.

The two corporate defendants had equities as mortgagees of the purchasers' interest which the trial court could properly consider. Instead, the trial court treated them as as-

---

[3]Referred to on page 458 of the majority opinion.

signees of the purchasers' interest, and to that extent it erred. The situation makes it necessary to discuss the distinction between the two. Certainly it is not a distinction without a difference; their procedural rights and their property interests are quite different. The purchaser is entitled to possession of the property and to acquire title on performance of the contract. *Griffith v. Whittier,* 37 Wn.2d 351, 223 P.2d 1062 (1950); *Eckley v. Bonded Adjustment Co.,* 30 Wn.2d 96, 190 P.2d 718, 1 A.L.R.2d 717 (1948); *Turpen v. Johnson,* 26 Wn.2d 716, 175 P.2d 495 (1946); *Lawson v. Helmich,* 20 Wn.2d 167, 146 P.2d 537, 151 A.L.R. 930 (1944). An assignee is entitled to succeed to those rights.

The mortgagee is a creditor who is entitled to the return of his money. If he is not paid, he can foreclose his mortgage.[4] The cases hold that he has also the right to make or tender the payments to the seller necessary to protect his security, *i.e.,* to keep the contract in effect. *Scott v. Farnam, supra; Shaw v. Benesh,* 37 Wash. 457, 79 Pac. 1007 (1905).

However, the mortgagee has no right of possession and no right to require the transfer of title under the contract until he has acquired the interests of the purchaser-mortgagor, among which is the right to require performance on payment of the purchase price. The acquisition of the interests of the purchaser-mortgagor may require a foreclosure of the mortgage and the securing of a sheriff's deed covering that interest. It is, of course, hornbook law that a mortgagee has no right to possession of mortgaged real property without a "foreclosure and sale according to law." See also RCW 7.28.230. *Howard v. Edgren,* 62 Wn.2d 884, 385 P.2d 41 (1963); *State ex rel. Gwinn, Inc. v. Superior Court,* 170 Wash. 463, 16 P.2d 831, 19 P.2d 1119, 87 A.L.R. 620 (1932), and cases cited therein; *Western Loan & Bldg. Co. v. Mifflin,* 162 Wash. 33, 297 Pac. 743 (1931). *Norlin v. Montgomery,* 59 Wn.2d 268, 367 P.2d 621 (1961), has applied the same rule where the property mortgaged was the interest of the purchaser under an executory real-estate contract.

---

[4] Frequently, to make foreclosure unnecessary, the mortgagor—after default in his payments—will convey his interest to the mortgagee; but that is not the situation here.

It follows that the trial court erred in reinstating the contract with the mortgagees (the corporate defendants) as the purchasers before they foreclosed their mortgage, or otherwise acquired the interests of the contract purchasers.

It would appear that the trial court was misled by the statement in some of our opinions that "the mortgagee of the vendee in virtue of his mortgage acquires the right to complete the purchase if the mortgagor fails or refuses to do so.[5] Such a statement is incorrect if construed literally. The mortgagee could acquire that right only by a conveyance from the mortgagor or by a foreclosure of his mortgage. He would have, however, the right to make or tender such payments as would be necessary to protect his security, *i.e.*, to keep the contract in effect (supporting authority cited, *supra*).

The summary judgment of October 7, 1966, entered herein, should be set aside with instructions to limit the summary judgment against the purchasers, Millard C. Davis and wife, as indicated, and to permit the mortgagees of the interest of the contract purchasers to foreclose their mortgages. The mortgagees have the right and the obligation to make all payments necessary to keep the contract in force until their mortgages are satisfied, or until they foreclose their mortgages and secure the payment of the amounts due them, or acquire by sheriff's deed the interests of the pur-

---

[5]This statement appears in *Scott v. Farnam, supra* (p. 340), but had no application in that case, as the mortgagee of the contract purchaser's interest had foreclosed his mortgage and successfully maintained an action to recover the amount he had paid to the contract seller to complete the payment on the contract. It is reiterated in a quotation from *Young v. Clay*, 139 Ore. 427, 10 P.2d 602 (1932), appearing in *Nelson v. Bailey*, 54 Wn.2d 161, 165, 338 P.2d 757, 73 A.L.R.2d 1400 (1959). It had no application in either case.

The Oregon court quoted the statement from 59 C.J.S. 237, § 184, and the statement in that text is based upon an erroneous interpretation of an 1863 Illinois case, *Alden v. Garver*, 32 Ill. 32.

I find no case authority to support such a statement unless, as I indicate in this dissent, the mortgagee has foreclosed his mortgage or otherwise acquired the entire interest of the purchaser-mortgagor.

chasers in the contract. I do not question the plaintiff's right to possession during the pendency of this appeal.

ROSELLINI, J., concurs with HILL, J.

March 31, 1969. Petition for rehearing denied.

*Reported in 451 P.2d 916.